UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSIE LEE BRYANT, JR.,

    Petitioner,                                Hon. Gordon J. Quist

v.                                                      Case No. 1:10-CV-772

CAROL HOWES,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Bryant's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Bryant's petition be **denied**.

## BACKGROUND

        As a result of events that allegedly occurred on November 4, 2005, Petitioner was charged with first degree home invasion and three counts of felonious assault. Several individuals testified at Petitioner's bench trial. The relevant portions of their testimony are summarized below.

**Darryl Bushey**

As of November 4, 2005, Bushey resided at 681 Peacock, Pontiac, Michigan, with his mother, Mary, and his brother, Michael. (Trial Transcript, February 27, 2006, 5-6). At approximately 6:30-7:00 a.m. that morning, Bushey "awoke to pounding on [the] door." (Tr. 6-7). Bushey also heard Petitioner yelling, "you better open up this door, or I'm going to kick it in." (Tr. 5-8). Bushey went to open the door to "see what [Petitioner's] problem was, why he was banging on [the] door, demanding to have it opened." (Tr. 7-8). When he opened the door, Bushey immediately realized that Petitioner was pointing a gun at his head. (Tr. 8).

Petitioner told Bushey "not to mess around because he would shoot [him]." (Tr. 9). Petitioner then instructed Bushey to "back up, to move into the house." (Tr. 9). Petitioner told Bushey, "don't fuck with me." (Tr. 9-11). Bushey complied with Petitioner's instructions. (Tr. 11). Michael Bushey then exited his bedroom, at which point Petitioner grabbed him, pushed him against a wall, and "put [his] gun right underneath his chin." (Tr. 14). Petitioner then began to question Michael about Deena Miller, a married woman with whom Petitioner was having an affair. (Tr. Trial Transcript, February 27, 2006, 12-16; Trial Transcript, February 28, 2006, 49). Deena Miller and her husband were friends with Mary Bushey. (Trial Transcript, February 28, 2006, 49). Petitioner wanted Michael Bushey to tell him "what was going on with Deena." (Trial Transcript, February 27, 2006, 16).

At this point, Bushey's mother, Mary, exited her bedroom. (Tr. 17). Petitioner immediately pointed his weapon at Mary and instructed her not to move. (Tr. 17). A moment later, Petitioner returned his attention (and weapon) to Michael Bushey, again instructing him to "stop playing around and tell me what you know." (Tr. 19). Petitioner then pointed his weapon at himself

and stated "that he really didn't care" and that they "could all die right here." (Tr. 19-20).

Persuaded that Michael Bushey did not possess any information about Deena, Petitioner exited the house. (Tr. 20-22). As Petitioner exited the house, he pointed his weapon at the Busheys' dogs and indicated that the Busheys "better be telling the truth [or] he'd shoot the dogs too." (Tr. 22). As soon as Petitioner exited the house, Darryl Bushey heard a "pop" that "sounded like a gun shot." (Tr. 22). Petitioner then entered his truck and drove away. (Tr. 22).

**Michael Bushey**

As of November 4, 2005, Bushey resided at 681 Peacock, Pontiac, Michigan, with his mother, Mary, and his brother, Darryl. (Trial Transcript, February 28, 2006, 4). Bushey awoke that morning at approximately 6:30-7:00 a.m. to the sounds of somebody "screaming" and "pounding on the door." (Tr. 5-6). When Michael Bushey exited his bedroom, he observed Petitioner pointing a gun at Darryl Bushey's head. (Tr. 5-7). Petitioner immediately approached Michael Bushey and placed his weapon "under [Michael's] chin." (Tr. 8).

Bushey informed Petitioner that he "didn't know what [Petitioner] wanted." (Tr. 9-10). Soon thereafter, Bushey's mother exited her bedroom. (Tr. 10). Petitioner immediately pointed his weapon at Mary Bushey and began screaming at her. (Tr. 10-11). Petitioner then pointed his weapon at the Busheys' dogs and said he "wasn't playing any games." (Tr. 11). Petitioner then exited the residence. (Tr. 11-12). Immediately after Petitioner exited the house, Bushey heard a gun shot. (Tr. 12). Petitioner then entered his truck and drove away. (Tr. 13).

3

**Mary Bushey**

As of November 4, 2005, Bushey resided at 681 Peacock, Pontiac, Michigan, with her sons Darryl and Michael. (Trial Transcript, February 28, 2006, 43-44). At approximately 6:30 a.m. that morning, Mary Bushey "hear[d] a vehicle pull up in [her] drive." (Tr. 44). When Bushey looked out her window, she recognized Petitioner's truck immediately after which she heard "pounding on the door." (Tr. 44). After Darryl Bushey answered the door, Mary Bushey "hear[d] a bunch of commotion." (Tr. 46). Mary Bushey immediately went to Michael's room "and told him to get up, that something was wrong, that it sounded like [Petitioner] was angry." (Tr. 46).

When Mary Bushey entered the main area of the residence, she observed that Petitioner was pointing a gun at Darryl. (Tr. 46-48). Petitioner then approached Michael and placed his weapon under Michael's chin. (Tr. 47-50). Petitioner then began asking Michael questions which he was unable to answer. (Tr. 47-50). Petitioner then pointed his weapon at Mary Bushey. (Tr. 51). After briefly pointing his weapon at himself, Petitioner exited the residence. (Tr. 50-54). As he departed, Petitioner stated, "you guys just keep your mouth shut and don't do anything; and if you go to the cops, I'll kill you." (Tr. 52).

**Robert Koteles**

As of November 4, 2005, Koteles was employed as a Detective for the City of Pontiac Police Department. (Trial Transcript, February 28, 80-81). Koteles met with Petitioner at 4:20 p.m. that afternoon following Petitioner's arrest. (Tr. 81). Prior to speaking with Petitioner, Detective Koteles informed Petitioner of his *Miranda* rights. (Tr. 83-84). Petitioner verbally acknowledged that he understood his rights and also signed a *Miranda* rights acknowledgment form. (Tr. 84-86).

Another detective was present during this interview. (Tr. 81-82). Detective Koteles did not force Petitioner to speak with him and, moreover, did not make any threats or promises to Petitioner. (Tr. 82). Petitioner told Koteles that he had been having an affair with Deena Miller for "about two and half years," but that Miller's husband had "caught them." (Tr. 87). Petitioner also reported that he suspected that Deena Miller "was cheating on him" with a guy named Jason. (Tr. 87). Petitioner also reported that Jason "was coming after him and his mother." (Tr. 87). Petitioner acknowledged that earlier that day he went to the Bushey residence "to talk to Mike [Bushey] about helping him with Jason." (Tr. 87-88). Petitioner eventually admitted that he had pointed a "toy gun" at Michael Bushey. (Tr. 90). Petitioner then conceded that his weapon had, in fact, been a "real gun" and that he had "probably pointed the gun at Mary and Darryl [Bushey], because he was waiving the gun around." (Tr. 91). Detective Koteles' interview of Petitioner only lasted 20-30 minutes. (Tr. 92).

At no time during the interview did Petitioner indicate that he was hungry or tired. (Tr. 104). When Petitioner indicated that he was thirsty, Detective Koteles provided him with water. (Tr. 104). While Petitioner was "very loud" and "kept flying his arms around," he denied being under the influence of any drugs or alcohol. (Tr. 82-83, 105). Moreover, Petitioner did not appear to Detective Koteles to be under the influence of any intoxicants. (Tr. 104-05).

**Jessie Lee Bryant, Jr.**

Petitioner acknowledged that he went to the Bushey residence on November 4, 2005. (Trial Transcript, February 28, 2006, 111-13). Petitioner testified that Mary Bushey and Michael Bushey had been "spreading rumors" that he was "going crazy" and "losing [his] mind." (Tr. 114-

5

15). Petitioner testified that this "really bothered" him because he was neither crazy nor losing his mind. (Tr. 114-15). Petitioner went to the Bushey residence to question Michael Bushey about the matter. (Tr. 118-19).

Petitioner denied pounding on the door or using force or threats to gain entry to the Bushey residence. (Tr. 118, 125-27). Petitioner denied possessing a gun or threatening any of the Bushey family. (Tr. 120-22). When asked why the Busheys would testify falsely about the events in question, Petitioner suggested that it might be because Mary Bushey "tried on several occasions after her husband died" to initiate a relationship with Petitioner, who rebuffed such advances. (Tr. 122-23). Petitioner further testified that when Mary Bushey found out that he was having an affair with Deena Miller, it "really devastated her." (Tr. 123).

Petitioner acknowledged that Detective Koteles informed him of his *Miranda* rights. (Tr. 142). Petitioner acknowledged that he understood his *Maranda* rights and signed the advice of rights form that he was provided. (Tr. 142-45). Petitioner testified that he was not drunk or under the influence of any drugs or controlled substances when he was interviewed by Detective Koteles. (Tr. 143). Petitioner acknowledged understanding Detective Koteles' questions. (Tr. 144). Petitioner, however, denied telling Detective Koteles that he was in possession of a gun on the day in question. (Tr. 124-25, 149).

**Sharon Bryant**

Sharon Bryant is Petitioner's mother. (Trial Transcript, February 28, 2006, 154-55). Bryant testified that Petitioner had never owned a handgun. (Tr. 156-57). According to Bryant, Mary Bushey "broke down and started crying" when she learned that Petitioner was having an affair

6

with Deena Miller. (Tr. 160-61).

Following the presentation of evidence, the trial judge found Petitioner guilty beyond a reasonable doubt of all four charges (first degree home invasion and three counts of felonious assault). (Tr. 189-93). Petitioner was sentenced to serve 7-20 years in prison for the home invasion and 2-4 years for each felonious assault conviction. (Sentence Transcript, December 4, 2006, 18). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claim:

    I.    Defendant was deprived of the effective assistance of counsel and entitled to a new trial.[1]

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Bryant*, 2009 WL 763482 (Mich. Ct. App., Mar. 24, 2009). Asserting the following claims, Petitioner later moved in the Michigan Supreme Court for leave to appeal:

    I.    Defendant was deprived of the effective assistance of counsel and entitled to a new trial.[2]

    II.    Darrell Bushey lied when he testified that Defendant forced his way into the house and stuck a gun in his face.

    III.    Defendant was not given a psychological evaluation before trial to determine if he was competent to stand trial.

The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Bryant,* No. 138876, Order (Mich.,

---

[1] Specifically, Petitioner asserted that his attorney was ineffective for: (1) failing to challenge the admissibility of the statements he made to the police following his arrest; and (2) failing to request that Petitioner undergo a forensic examination to assess his criminal responsibility and competency to stand trial. (Dkt. #17).

[2] With respect to this particular claim, Petitioner asserted the two grounds he advanced in the Michigan Court of Appeals, as well as the grounds that his attorney waived a preliminary examination and failed to argue to the jury that certain witness had provided inconsistent testimony. (Dkt. #18)

Aug. 6, 2009). On August 4, 2010, Petitioner initiated the present action asserting the "[s]ame issue raised in all the lower State Courts." (Dkt. #1).

Respondent subsequently moved to dismiss Bryant's petition on the ground that he failed to properly exhaust the claims asserted therein. (Dkt. #8). Resolution of Respondent's motion turned on a determination of precisely what claim(s) Petitioner was asserting in this action. In an April 4, 2011 Report and Recommendation, the undersigned concluded that Petitioner was asserting in the present action "a single claim, that Petitioner was denied the right to the effective assistance of counsel on the grounds that his attorney: (1) failed to challenge the admissibility of the statements Petitioner made to the police following his arrest; and (2) failed to request that Petitioner undergo a forensic examination to assess criminal responsibility and competency to stand trial." (Dkt. #21). As Petitioner properly presented these particular issues in state court, the undersigned recommended that Respondent's motion to dismiss be denied. Respondent did not object to this determination and the Report and Recommendation was later "approved and adopted as the opinion of the Court" by the Honorable Gordon J. Quist. (Dkt. #22).

### STANDARD OF REVIEW

Bryant's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

8

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly

established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

**ANALYSIS**

As previously noted, Petitioner's only claim is that he was denied the right to the effective assistance of counsel based on his trial counsel's failure to challenge the admissibility of Petitioner's statements to Detective Koteles and his failure to request that Petitioner undergo a forensic examination to assess his criminal responsibility and competency to stand trial.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*,

466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

### A.   Petitioner's Statements to Detective Koteles

Petitioner asserts that given the "bizarre" behavior he displayed during his interview with Detective Koteles, his attorney was ineffective for failing to seek the suppression of the statements he made to the detective.

While Detective Koteles acknowledged that Petitioner exhibited odd behavior during their interview (e.g., talking loudly and "flying his arms around"), the detective also testified that Petitioner did not appear to be under the influence of drugs or alcohol. Petitioner likewise denied

being under the influence of any drugs or alcohol. Furthermore, given Petitioner's trial testimony that he is simply "hyper," "excited," and "talk[s] with [his] hands," (Trial Transcript, February 28, 2006, 116, 119), Petitioner's behavior during his interview with Detective Koteles appears to be nothing more than a personal idiosyncracy.

The Court fails to discern how counsel's decision not to challenge the admissibility of Petitioner's statements to Detective Koteles, based on nothing more than Petitioner's tendency to become hyperactive and "talk with his hands," constitutes an error "so serious that [counsel] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Furthermore, even if counsel's failure to seek to suppress the statements at issue is deemed deficient performance, Petitioner cannot establish that he suffered prejudice as a result therefrom.

As has been long recognized, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination." *Thompkins v. Berghuis*, 547 F.3d 572, 582 (6th Cir. 2008) (quoting *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)). Courts "must presume that a defendant did *not* waive his rights" and the prosecutor's burden to demonstrate otherwise "is great." *Thompkins*, 547 F.3d at 582 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). When assessing whether a defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent, courts must examine the totality of circumstances. *See Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (quoting *Brown v. Illinois*, 422 U.S. 590 (1975)). The circumstances relevant to this inquiry include: (1) the existence of police coercion; (2) the location, length, and continuity of the interrogation; (3) the defendant's maturity and education; (4) the defendant's physical condition and mental health; and (5) whether the defendant was advised of his *Miranda* rights. *See Abela*, 380 F.3d at 928.

Petitioner has not asserted that he was subjected to any form of coercion or that the nature and circumstances of his interview were otherwise inappropriate or uncomfortable. Petitioner has not asserted that he lacked the maturity or education to understand the nature of the rights in question or the consequence of waiving such. Petitioner has not asserted that his physical or mental condition was in any sense diminished or impaired. Moreover, Petitioner acknowledges that Detective Koteles informed him of his *Miranda* rights and that he understood such. In sum, Petitioner has failed to articulate any rationale for finding that his statements to the detective were not made voluntarily, knowingly, and intelligently or were otherwise subject to suppression.

Petitioner presented this claim to the Michigan Court of Appeals, which rejected it on the ground that Petitioner was not prejudiced by his counsel's allegedly deficient performance. *People v. Bryant*, 2009 WL 763482 at *2-3 (Mich. Ct. App., Mar. 24, 2009). As the court observed:

> if the trial court held a *Walker* hearing, it would have found that defendant's statements were voluntary, knowing and intelligent. Because defense counsel is not required to make a meritless motion, his failure to request a *Walker* hearing did not deny defendant the effective assistance of counsel.

*Id.* at *3 (internal citation omitted).

This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

B.     Forensic Evaluation

Petitioner next argues that he was denied the effective assistance of counsel when his attorney failed to request a forensic examination of Petitioner to assess his competency to stand trial, as well as his criminal culpability. Petitioner alleges that in light of the evidence that he was a "moody" person and his behavior on the day in question was "out of character," his attorney should have requested a forensic evaluation.

That Petitioner may have experienced moodiness and acted "out of character" on the day in question is hardly a sufficient basis to call into question Petitioner's competency to stand trial or his mental status when the crime was committed. Thus, the Court is not persuaded that counsel's conduct in this regard constituted deficient performance. However, even if it is assumed that counsel's performance was deficient, Petitioner is not entitled to relief because he cannot establish that was prejudiced therefrom.

Under Michigan law in effect at the time of Petitioner's trial, a criminal defendant was "presumed competent to stand trial" and was considered incompetent to stand trial "only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." Mich. Comp. Laws § 330.2020(1) (2005). Moreover, a criminal defendant was not considered incompetent to stand trial "because psychotropic drugs or other medication have been or are being administered under proper medical direction, and even though without such medication the defendant might be incompetent to stand trial." Mich. Comp. Laws § 330.2020(2) (2005).

Under Michigan law in effect as of the date Petitioner committed the offenses in question, it was "an affirmative defense to a prosecution for a criminal offense that the defendant

16

was legally insane when he or she committed the acts constituting the offense." Mich. Comp. Laws § 768.21a(1) (2005). This provision further provided that a defendant was legally insane if, "as a result of mental illness. . .or as a result of being mentally retarded. . .that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." *Id.* The defendant had the burden to prove the defense of insanity by a preponderance of the evidence. Mich. Comp. Laws § 768.21a(3) (2005). Finally, as the Michigan Supreme Court recognized, "the insanity defense as established by the [Michigan] Legislature is the sole standard for determining criminal responsibility as it relates to mental illness or retardation." *People v Carpenter*, 627 N.W.2d 276, 284 (Mich. 2001).

The record contains no evidence that Petitioner was either incompetent to stand trial or was legally insane when he committed the crimes in question. Noting that there was no evidence to support Petitioner's position, the Michigan Court of Appeals rejected this particular claim, concluding that Petitioner "has failed to show that his counsel was ineffective for failing to ask for a pretrial psychological evaluation." *Bryant*, 2009 WL 763482 at *2. This conclusion is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, it is not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Bryant's petition for writ of habeas corpus be **denied**. The

undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 22, 2012

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge